

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable R. S. Wyche
County Auditor
Gregg County
Longview, Texas

Dear Sir:

Opinion No. O-2401
Re: May the County Superintendent
discount State Aid Warrants at
other banks, other than depos-
itory banks, which might dis-
count such warrants for less
than the depository bank is
charging?

Your letter of May 22, 1940, requesting the opinion
of this department on the above stated question, has been re-
ceived.

We quote from your letter as follows:

"State Aid Warrants are received by the
County Superintendent of common school districts.
Has the County Superintendent of common school
districts authority to discount such warrants at
other banks other than the depository bank?

"In other words, can such Superintendent dis-
count such warrants at other banks other than de-
pository banks which might discount such warrants
for less than the depository bank is charging?"

The general duties of the County Superintendent are such
as his title indicates. He is in truth superintendent of the
county public schools. Such schools are managed, controlled, op-
erated and maintained under his superintendence. In apportion-
ing the school fund, and in performing other duties, he is sub-
ject to the discretion of the State Superintendent. So, in a
sense, a county officer, and though called "County Superinten-
dent," he is in fact the officer and agent of the State. With

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

respect to school affairs, he acts for the State and not for the county. The County Superintendent is, by Article 2681, Vernon's Annotated Civil Statutes, made the secretary of the corporate body composed of the county school trustees; he is not a member of that body, nor given a voice in determining any matter they may be called on to decide. Carrell vs. State, 209 S. W. 156; Webb County vs. Board of School Trustees, 64 S. W. 456; Texas Juris., Vol. 37, p. 932.

The powers and duties of public officers are quite generally prescribed by the Constitution and statutes, and, subject to the constitutional limitations, these matters are under the control of the Legislature, and in many instances the Constitution expressly gives it power to prescribe the duties of particular officers. The term "duties" in such a grant to the Legislature comprehends the further idea of power or authority, and the Legislative act will be looked to for the authority of the officer as well as for a definition of his duties. Powers and duties are coextensive, and an officer has no authority to perform an act in respect to which no duty has been made to devolve upon him. Public officers and governmental and administrative boards possess only such powers as are expressly conferred upon them by law, or are necessarily implied from the powers so conferred. They cannot legally perform acts not authorized by existing law. Arnold vs. State, 9 S. W. 120; Lee vs. Leonard Independent School District, 24 S. W. (2d) 449; Duncan vs. State, 67 S. W. 903; State vs. Cage, 176 S. W. 928; Callagan vs. McGown, 90 S. W. 319; Texas Juris., Vol. 34, pp. 440-441.

Statutes which prescribe and limit the exercise of official duty are strictly construed in respect of the powers conferred and the manner of their exercise, and such powers are not to be analyzed by construction. Where the Constitution defines the powers of an officer, he is confined to the powers enumerated, and the express mention of such powers negatives the existence of others. It is equally well settled, however, that a law which confers a power and imposes a duty upon an officer or a board carries with it by implication the authority to do such things as are reasonably necessary to carry into effect the power granted or the duty imposed. Thus power to do certain work or to accomplish a certain result which cannot otherwise be accomplished, implies the authority to employ such agents as may be reasonably necessary to accomplish the work or purposes specified, and to engage them for such length of time as reasonably necessary. Bryan vs. Sundberg, 5 Tex. 416; Taylor vs. Goodrich, 40 S. W. 515; Teer vs. Sparks, 135 S. W. 519; Tex. Jur., Vol. 34, p. 444.

Appropriations for aid to rural schools are as a rule made at each regular session of the Legislature, and each act appropriating the funds for rural aid prescribes the conditions for disbursing the appropriation made by the specific act, which expires with the appropriation, and ordinarily no article number is assigned to such act.

The equalization law for the years 1939-1941, Acts of the 46th Legislature, 1939, which may be found under Chap. 19b of the Public School Laws of Texas, provides in part as follows:

"Section 1. Appropriation:--For the purpose of promoting public school interest and equalizing the educational opportunities afforded by the State to all children of scholastic age within the State, there is hereby appropriated out of the General Revenue Fund Six Million, Eight Hundred Twenty-five Thousand, Eight Hundred Twenty-seven ($6,825,827.00) Dollars, or so much thereof as may be necessary for the school year ending August 31, 1940,"

and a like amount, or so much thereof as may be necessary for the school year ending August 31, 1941, is appropriated, to be allocated and expended by the State Superintendent of Public Instruction to the Director of Equalization in the State Department of Education and under the supervision and advice of a special joint legislative advisory committee composed of the members as designated therein.

Section 16 of the same act provides in part that:

"Warrants for all money granted under the provisions of this Act shall be transmitted by the State Superintendent of Public Instruction, when the account for same has been audited by the State Auditor, to treasurers of depositories of school districts to which aid is granted and approved in the same manner as warrants for State apportionments are now transmitted...."

There have been numerous enactments with respect to the depositories or treasurers of school funds, and such special laws control insofar as they may conflict with general statutes, as the selection of city and county depositories. Funds must be deposited in the required manner and upon the

stipulated securities; they may not be deposited with any person or corporation other than the duly selected and qualified treasurer or depository. Thomason vs. Elmo Independent School District, 269 S. W. 868; Jones vs. Marrs, 263 S. W. 570.

Article 2828, Vernon's Annotated Civil Statutes, reads as follows:

"The terms 'county treasurer' and 'county treasury', as used in all provisions of law relating to school funds, shall be construed to mean the county depository. The commissioners court shall file with the State Department of Education a copy of the bond of said depository to cover school funds. No commission shall be paid for receiving and disbursing school funds. (Acts 1905, p. 263; Acts 1909, p. 17.)"

The constitutionality of this statute has been sustained. (Charlton vs. Cousins, 124 S. W. 422.) When construed as a whole, it places the immediate and exclusive custody of the school funds in the county depository when duly selected and bonded, requires the disbursement of such funds otherwise and by or through the county treasurer, and expressly provides that no commission shall thereafter be paid for receiving or disbursing the funds. There is nothing in the Constitution which requires that the school funds shall be kept in the custody or under the management or control of the county treasurer or of any other officer. Any agent or employee which the Legislature may provide may be entrusted with the performance of the service as well as a public officer. Although the Legislature may not enact rules to operate as laws to govern the management of the business of national banks, it may prescribe terms on which public funds may be deposited, so as to insure the safe keeping, investment, lawful disbursement; and a national bank, as well as any other qualified agency, may voluntarily undertake to be bound by the prescribed terms. Charlton vs. Cousins, 124 S. W. 422; Tex. Jur., Vol. 37, pp. 973-974.

State Aid Warrants are transmitted by the State Superintendent of Public Instruction, when the account for same has been audited by the State Auditor, to treasurers of depositories of school districts to which aid is granted and approved in the same manner as warrants for State apportionments are now transmitted. These warrants are not transmitted to the County

Superintendent and he has no legal authority or right to discount such warrants.

In view of the foregoing authorities, your question is respectfully answered in the negative. You are further advised that this opinion is not to be construed as holding that the depository bank has the legal authority to discount State Aid Warrants.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

APPROVED JUN 7, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

AW/os

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN